UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| REGINA ANNE CHAMPION, | Case No. 3:19-cv-00732 |
| Plaintiff, | |
| v. | Judge William L. Campbell, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

To:    The Honorable William L. Campbell, Jr., District Judge

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff Regina Anne Champion filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. Nos. 3, 14.) Before the Court is Champion's motion for judgment on the administrative record (Doc. No. 20), to which the Commissioner has responded in opposition (Doc. No. 23), and Champion has filed a reply (Doc. No. 24). Having considered these filings and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Champion's motion be granted, the ALJ's decision be vacated, and this case be remanded for further administrative proceedings and rehearing consistent with this Report and Recommendation.

## I. Background

### A. Champion's Disability Insurance Benefits Application

Champion applied for DIB on April 4, 2016, alleging that she has been disabled and unable to work since February 15, 2016, as a result of degenerative disc disease (DDD) in her lumbar spine; arthritis in her left leg; hypertrophic facet osteoarthropathy; disc herniation at L5–S1; osteoporosis in her lumbar spine and left hip; sciatica; gastroesophageal reflux disease (GERD); obesity; and irritable bowel syndrome (IBS). (AR 32–34.[1]) The Commissioner denied Champion's application initially and on reconsideration. (AR 32, 46.) At Champion's request, an administrative law judge (ALJ) held a hearing on February 22, 2018. (AR 74, 646–77.) Champion appeared with counsel and testified. (AR 649–73.) The ALJ also heard testimony from Charles Wheeler, a vocational expert. (AR 673–74.)

### B. The ALJ's Findings

On August 14, 2018, the ALJ issued a written decision finding that Champion was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claim for benefits. (AR 17–25.) The ALJ made the following enumerated findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021 (8D/1).
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> \*      \*      \*
>
> 3. The claimant has the following severe impairments: fibromyalgia; DDD (cervical and lumbar); D[iabetes] M[ellitus]; obesity; and O[steoarthritis] (20 CFR 404.1520(c)).

---

[1]     The Transcript of the Administrative Record (Doc. Nos. 12, 17) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

*      *      *

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

*      *      *

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling; frequent balancing; and occasionally reaching overhead with bilateral upper extremities.

*      *      *

6.  The claimant is capable of performing past relevant work as a maintenance planner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

*      *      *

7.  The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2016, through the date of this decision (20 CFR 404.1520(1)).

(AR 19–24.) The Social Security Appeals Council denied Champion's request for review on June 24, 2019, making the ALJ's decision the final decision of the Commissioner. (AR 3–8.)

## C.    Appeal Under 42 U.S.C. § 405(g)

Champion filed this action for review of the ALJ's decision on August 20, 2019 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Champion argues that the ALJ violated SSA regulations by failing to give good reasons for discrediting Dr. Satyen Saraswat's medical opinions, failing to consider Dr. Brenna Green's medical opinion, failing to consider physical therapist Don Ratcliffe's opinion, and improperly evaluating Champion's subjective complaints. (Doc. No. 21.) The Commissioner responds that the ALJ's decision is supported by

substantial evidence and that the ALJ followed applicable regulations. (Doc. No. 23.) Champion's reply reiterates her previous arguments. (Doc. No. 24.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

4

## B.     Determining Disability at the Administrative Level

Champion applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Champion must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the

ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:17-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted sub nom. Walker v. Soc. Sec. Admin.* 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Analysis

The crux of this appeal is the ALJ's formulation of Champion's RFC—specifically, her determination that, despite a finding of severe fibromyalgia, cervical and lumbar DDD, osteoarthritis, and obesity, among other conditions, Champion had no limitations in standing,

walking, sitting, and concentrating, persisting, or maintaining pace (AR 20, 21–24) and could return to past jobs that "required the worker to be on their feet a good portion of the work day" (AR 674). These findings conflict with the opinions of Dr. Satyen Saraswat, Champion's primary care physician (AR 200, 300–01, 530–32); Dr. Brenna Green, her pain specialist (AR 632–36); and physical therapist Don Ratcliffe (AR 348–49). They also conflict with Champion's own testimony about her symptoms. (AR 666–72.) Champion argues that the ALJ violated the treating physician rule by failing to provide good reasons for discounting Dr. Saraswat's opinions and failing to consider Dr. Green's opinion at all. (Doc. No. 21.) She further argues that the ALJ violated SSA regulations by failing to consider Ratcliffe's opinion and improperly discounting her subjective complaints. (*Id.*) The Commissioner argues that the ALJ's decision is supported by substantial evidence and that her failure to consider Dr. Green's and Ratcliffe's opinions was harmless. (Doc. No. 23.)

### A.    The ALJ's Consideration of Treating Physician Opinions

The SSA has promised DBI claimants that it "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence" and, "[r]egardless of its source, . . . will evaluate every medical opinion [it] receive[s]." 20 C.F.R. § 404.1527(b), (c).[2] In disability claims filed before March 27, 2017, an ALJ must give special consideration to medical opinions from a claimant's treating physician.[3] Specifically, an ALJ must give controlling weight to a

---

[2]    Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [any] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

[3]    A treating physician is an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2).

treating physician's opinion regarding the nature and severity of a claimant's condition or RFC if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (same); *see also Gentry*, 741 F.3d at 727 (holding that "[t]he treating physician rule also applies to the RFC of the claimant"). The rationale behind the rule is that a treating source's opinion is most likely "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2).

A finding that a treating physician's opinion is not entitled to controlling weight—either because it is not well-supported by medically acceptable evidence and techniques or because it is inconsistent with the substantial evidence in the record—does not mean that the opinion should be rejected entirely. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). In weighing a non-controlling treating physician's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record, the specialization of the treating source, and any other relevant factors. *Gentry*, 741 F.3d at 727 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. § 404.1527(c)(2)–(6). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom.*

*Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). Such reasons must be "supported by the evidence in the case record[ ] and . . . sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5.

### 1. Dr. Saraswat's Opinions

The record includes a letter from Dr. Saraswat dated April 19, 2016, and a medical source statement he completed on January 8, 2018. (AR 200, 530–32.) Dr. Saraswat's April 19, 2016 letter states as follows:

> Regina Champion has been put on medical leave for six months due to her diagnoses of Osteoporosis, arthritis of knee, herniated disc, IBS, chronic back pain and sciatica. The beginning date that she could no longer perform her job duties is Feb[r]uary 23, 2016. She is unable to stand for more than a couple minutes and can[ ]not use a stairway at all. She is not able to sit in a straight chair. Mrs. Champion must use a recliner when sitting. She is not able to drive on medications. When on medication she has to stop approximately every 15 miles to get out of the car. Mrs. Champion can only walk for a few moments then has to stop and rest due to pain. These chronic problems are to be followed by Dr. Green her pain specialist and myself as needed. She is currently active in physical therapy and maintaining pain with medication. It appears this may be a perm[anent] condition. Due to her current state she is not able to be released back to work at this time.

(AR 200.)

On the January 8, 2018 medical source statement, Dr. Saraswat checked a box indicating that Champion was "**not capable** of performing work activity at any exertional level for 8 hours per day/40 hours per week on an ongoing basis." (AR 530.) The form prompted Dr. Saraswat to "circle" any "other work-related activities" listed that were "significantly restricted by [Champion's] condition/s or impairment/s" and "describe the extent of limitation by" placing a check mark next to "None," "Occasionally," or "Frequently[.]" (AR 531.) Dr. Saraswat checked "none" for all fifteen categories listed:

If other work-related activities, such as:

| | None | Occasionally | Frequently |
|---|---|---|---|
| handling, | ✓ | | |
| fingering, | ✓ | | |
| forceful or repetitive gripping, | ✓ | | |
| reaching and or pushing/pulling, | ✓ | | |
| bending, | ✓ | | |
| stooping, | ✓ | | |
| crouching, | ✓ | | |
| kneeling, | ✓ | | |
| climbing (stairs/ramps/ ladders/scaffolds), | ✓ | | |
| seeing, | ✓ | | |
| hearing, | ✓ | | |
| speaking, | ✓ | | |
| tolerating exposure to dusts, fumes, smoke, etc., | ✓ | | |
| working at heights or around moving machinery, | ✓ | | |
| tolerating heat, cold, wetness or humidity | ✓ | | |

are, in your opinion, significantly restricted by your patient's condition/s or impairment/s, please circle the activity so limited and describe the extent of limitation by appropriate checkmark beside the circled activity/ies.

(*Id.*) Dr. Saraswat further indicated that Champion's "pain and/or side-effects of medication would significantly interfere with [ ]her ability to sustain concentration, persistence and/or pace for as much as two (2) hours at a time without interruption even for simple tasks" and that she would "need a job which afford the opportunity for unscheduled breaks for symptom control." (*Id.*) He indicated that, in an average month, Champion would "have to miss work due to pain level and/or medication side effects" "3 or more" days. (AR 532.)

The ALJ analyzed Dr. Saraswat's opinions as follows:

The undersigned accords little weight to the opinion of Satyen Saraswat, M.D., from January 2018 (13F). There is no support for Dr. Saraswat['s] limitations. For example, Dr. Saraswat indicated "none" in activities such as seeing, hearing, and speaking, yet treatment records fail to show what limitations cause such limitations (13F/2). Additionally, when this opinion was rendered, it appears from the record that Dr. Saraswat had not treated the claimant after 2016. The claimant testified that Dr. Green was her current physician and record[s] show that Dr. Green has been treating the claimant since August 2016 (14F). The undersigned also gives little

weight to Dr. Saraswat's opinion from April 2016 (3F/4-5 and 5E/10). The evidence of record, including treatment notes, does not support the assessed limitations.

(AR 23.)

The Court finds that the ALJ failed to provide good reasons supported by substantial evidence for discounting Dr. Saraswat's opinions regarding Champion's standing, sitting, walking, concentration, persistence, and pace limitations. *See Gentry*, 741 F.3d at 727. The ALJ's blanket assertion that "[t]here is no support" for any of the limitations described in Dr. Saraswat's 2018 opinion is not supported by substantial record evidence. Saraswat's opinion that Champion is not capable of performing work activity at any exertional level for eight hours per day and forty hours per week on an ongoing basis is supported by MRI results showing: "[m]ild degenerative change of most of the thoracic discs"; "L5/S1 mild bilateral neuroforaminal narrowing" ; "3 mm retrolisthesis of L5 on S1"; "[m]ild annular disc bulges L3/4 and L4/5"; and "[m]ultilevel hypertrophic facet osteoarthropathy." (AR 292, 293). "[T]he fact that each individual finding was described only as mild or moderate" does not provide a good reason to discount even "extreme limitations[.]" *Berryhill v. Colvin*, Civ. Action No. 15-14029, 2017 WL 362669, at *6 (E.D. Mich. Jan. 6, 2017), *report and recommendation adopted sub nom. Berryhill v. Comm'r of Soc. Sec.*, 2017 WL 872664 (E.D. Mich. Mar. 3, 2017); *see also id.* (finding that "[n]either the ALJ nor this Court have the medical expertise to assess the limitations necessary to account for the combination of [claimant's] discogenic degenerative changes, disc bulge, subluxation deformity, facet hypertrophy, central canal stenosis, thecal sac compression, spondylosis, arthropathy and neural foraminal stenosis, regardless of the fact that each individual finding was described only as mild or moderate"). Further support for this limitation includes treatment notes from Dr. Saraswat regarding Champion's pain, paresthesia, and falls (AR 290–91); treatment notes from Dr. Green regarding Champion's chronic pain and paresthesia (AR 403–06, 408–17); and physical therapy

treatment notes for Champion's diagnosed "[l]ow back pain" and "[d]ifficulty in walking" (AR 323–47).

The ALJ's finding that the treatment records do not support limitations on Champion's ability to see, hear, or speak—while accurate—do not constitute a good reason to disregard the exertional limitations in Dr. Saraswat's 2018 opinion that *are* supported by the record evidence. Indeed, the ALJ herself found, based on the record evidence, that Champion could never climb ladders, ropes, or scaffolds (AR 21) which is one of the limitations prescribed in Saraswat's 2018 opinion (AR 531). Nor is the fact that Dr. Green had seen Champion more recently than Dr. Saraswat a good reason to disregard all of the limitations in Saraswat's 2018 opinion, especially because—as discussed below—the ALJ failed to even consider Dr. Green's opinion. Further, Dr. Saraswat's 2016 opinion and a physical assessment he completed for Champion on April 22, 2016, during a physical exam showed similar recommended limitations. Specifically, Saraswat's physical assessment found that Champion's sitting, standing, and walking were limited to 0–2.5 hours per day and indicated that these limitations were supported by clinical findings. (AR 300.) Saraswat explained that Champion "can do limited movement only for about 15–30 min[utes] at a time." (AR 301.)

The ALJ's only asserted reason for discounting Saraswat's 2016 opinion was that "[t]he evidence of record, including treatment notes, does not support the assessed limitations." (AR 23.) This reason is not supported by substantial record evidence. The same clinical and diagnostic evidence described above supports Saraswat's opinion that, because of her numerous health conditions, Champion "is unable to stand for more than a couple minutes and can[ ]not use a stairway at all"; "is not able to sit in a straight chair"; and "can only walk for a few moments then has to stop and rest due to pain." (AR 200.)

The Court therefore finds that the ALJ failed to provide good reasons for discounting Saraswat's opinions regarding Champion's ability to sit, stand, walk, and maintain concentration, persistence, and pace. This failure amounts to a violation of the treating physician rule, *see Gentry*, 741 F.3d at 728 (holding that ALJ's analysis "violate[d] the treating source rule because the reasons for discrediting [the treating source's] opinion are not supported by the record"), and warrants remand regardless of whether the ALJ's denial of benefits may be justified by other evidence in the record, *see Miller*, 811 F.3d at 833.

An ALJ's failure to comply with SSA rules mandates remand unless that failure amounts to "harmless error." *Gentry*, 741 F.3d at 723. The Sixth Circuit has explained that an ALJ's violation of the treating physician rule is only harmless if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [20 C.F.R.] § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

*Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). The Commissioner has not argued that the ALJ's disregard of Saraswat's opinions was harmless, and the Magistrate Judge finds that it was not. First, it cannot be said that Saraswat's opinions were patently deficient because, as explained above, the relevant limitations are consistent with clinical testing and medical treatment records. Second, the ALJ did not adopt Saraswat's opinions regarding Champion's sitting, standing, walking, and concentration, persistence, and pace limitations. Instead, the ALJ found that Champion had no limitations in any of these areas. (AR 20, 21–24.) Finally, the ALJ's analysis does not meet the goals of 20 C.F.R. § 404.1527(c)(2) because it "leaves this Court without a clear understanding of why the ALJ" discredited Saraswat's opinions. *Cole*, 661 F.3d at 940. As the *Cole* court explained,

[i]t may be true that, on remand, the Commissioner reaches the same conclusion as to [claimant's] disability while complying with the treating physician rule and the good reasons requirement; however, [the claimant] will then be able to understand the Commissioner's rationale and the procedure through which the decision was reached.

*Id.* Because Champion is entitled to this procedural protection, the ALJ's error was not harmless and her case should be remanded.

Further, even if the ALJ's error were found harmless or her reasons for discrediting Saraswat's opinions were procedurally sound, the decision would nevertheless need to be remanded based on the ALJ's complete failure to consider Dr. Green's opinion.

### 2. Dr. Green's Opinion

On December 1, 2016, Dr. Green partially completed and signed a chronic pain RFC questionnaire for Champion. Dr. Green stated that she had examined Champion every one or two months for thirty minutes at a time and that Champion's "MRI reveals DDD/disc displacement with facet hypertrophy" and "[r]etrolisthesis with mild bilateral narrowing." (AR 632.) She further stated that she had diagnosed Champion with "chronic [low back pain], lumbar radiculopathy, lumbar/cervical spondylosis," "chronic axial low back pain with posterolateral leg pain [and] paresthesias[,] [c]hronic axial neck pain/upper arm pain[,] bilateral knee pain, [and] mid back pain[,]" among other conditions. (*Id.*) Dr. Green stated that Champion was not "a malingerer" and experienced "chronic sharp, stabbing, aching, burning" pain in her bilateral lumbosacral spine, bilateral cervical spine, bilateral thoracic spine, both arms, her right leg, and both knees, ankles, and feet. (AR 633.) Asked if any factors "precipitate pain" for Champion, Dr. Green marked the entry for "Movement/Overuse[.]" (*Id.*) When prompted "[h]ow often during a typical workday is [Champion's] experience of pain or other symptoms severe enough to interfere with **attention and concentration** needed to perform even simple work tasks[,]" Dr. Green marked entries for

"Occasionally" and "Frequently[.]" (*Id.*) Green did not answer the remaining questions regarding Champion's functional capacity and instead wrote "[n]eed FCE[.]" (*Id.*)

The ALJ identified Dr. Green as the treating physician who had seen Champion most recently when rejecting Dr. Saraswat's opinions; but, having made this designation, the ALJ did not mention or analyze Dr. Green's opinion.[4] The Sixth Circuit has held that an ALJ's total failure to address a treating physician's opinion is reversible error. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747–50 (6th Cir. 2007); *Hall v. Astrue*, No. 3:07CV0228, 2008 WL 4206127, at *6–7 (S.D. Ohio Sept. 9, 2008). Because the ALJ's decision "completely fails to acknowledge" Dr. Green's opinion, the Court cannot "be certain that the ALJ was aware" of the opinion and therefore cannot "know why the ALJ disregarded" it. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d at 748, 749. In such cases, "remand is . . . necessary so that the ALJ may fully consider and address [the treating physician's] opinion consistent with [SSA regulations]." *Id.* at 750; *see also Hall*, 2008 WL 4206127, at *1, 6–9 (remanding for further administrative proceedings where ALJ failed to mention treating physician's opinion).

The Commissioner's cursory argument that this failure was harmless error is unpersuasive. The Commissioner argues that the ALJ "'could not possibly have credited'" Dr. Green's opinion because she "did not identify any objective finding to support the opinion." (Doc. No. 23, PageID# 769.) This argument is not supported by the record evidence. When asked by the RFC questionnaire to "[i]dentify the key *clinical, or other findings*, which show [Champion's] medical impairments[,]" Dr. Green responded: "MRI reveals DDD/disc displacement with facet hypertrophy. Retrolisthesis with mild bilateral narrowing." (AR 632.) The Commissioner also

---

[4]     The Commissioner has not argued that Dr. Green is not a treating physician or that her opinion falls outside the regulatory definition.

argues that "[n]o medical provider noted any attention or concentration problems in their treatment notes" (Doc. No. 23, PageID# 769) while ignoring the copious treatment notes regarding Champion's pain, including prescription narcotics and extensive physical therapy, and Champion's repeated complaints that her pain and pain medications interfered with her ability to focus and concentrate. The Magistrate Judge therefore finds that Dr. Green's opinion was not patently deficient, the ALJ did not adopt Green's opinion or make findings consistent with it, and the ALJ's analysis does not meet the goals of 20 C.F.R. § 404.1527(c)(2) because it "leaves this Court without a clear understanding of why the ALJ" discredited Green's opinion. *Cole*, 661 F.3d at 940. The ALJ's decision should be remanded for her failure to consider Dr. Green's opinion.

### B. Champion's Remaining Arguments

Champion further argues that she is entitled to remand and rehearing because the ALJ: (1) failed to consider Ratcliffe's May 17, 2016 physical assessment as an "other source" under Social Security Ruling (SSR) 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006); and (2) improperly discounted Champion's subjective complaints under the Sixth Circuit's opinion in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 377–78 (6th Cir. 2013). (Doc. No. 21.)

Because Champion's case should be remanded to the ALJ to reconsider Saraswat's opinions and to consider Green's opinion, the Court need not address these remaining arguments. The ALJ will no doubt need to reevaluate the record evidence, including Ratcliffe's opinion and Champion's subjective complaints, in light of reconsideration of Saraswat's opinions and consideration of Green's opinion. If necessary, Champion may raise these issues again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, 2020 WL 906227 (Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

**IV.      Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Champion's motion for judgment on the administrative record (Doc. No. 20) be GRANTED, that the ALJ's decision be VACATED, and that this case be REMANDED for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 16th day of February, 2021.

ALISTAIR E. NEWBERN
United States Magistrate Judge